## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00120-RBJ-04

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. NEIL PERKINS,
2. PATRICK WILLIAMS,
3. FRANK BEDOLOTO,
**4. POWERLAB NUTRITION LLC,** and
5. REACTION NUTRITION LLC

    Defendants.

_____

### GOVERNMENT'S SENTENCING STATEMENT AS TO POWERLAB NUTRITION LLC
_____

The United States of America, by and through Robert C. Troyer, Acting United States Attorney for the District of Colorado, and Jaime A. Pena, Assistant United States Attorney, submits its Sentencing Statement, as follows:

**1. THE CHARGES:** On April 5, 2016, the defendants were charged by Indictment (Doc. #1) with, among other charges, Conspiracy to Defraud the United States and Violate the Laws of the United States.

**2. THE PENALTY RANGES:** The maximum statutory penalty for the violations of Title 18 U.S.C. § 371 (Conspiracy to Defraud the United States and Violate the Laws of the United States), is not more than a $500,000 fine, or both; up to 3 years supervised release; and a $100.00 special assessment fee.

**3. THE PLEA OF GUILTY:** On August 23, 2016 Powerlab Nutrition LLC by and through

its authorized representative pled guilty to Count 1 of the Indictment before the Honorable R. Brooke Jackson, United States District Court Judge for the District of Colorado.

**4. THE FACTS ADDUCED AT PLEA OF GUILTY (in the plea agreement and hearing):**

Around 2008, the owner of a local Colorado nutrition store (herein referred to as "CR") established Powerlab Nutrition LLC ("Powerlab" herein) as a Colorado corporation for the purpose of distributing body-building products throughout the United States. At the time, Neil Perkins was the manager of the nutrition store in Colorado and was at all times authorized to act on behalf of Powerlab and CR in obtaining the products that contained chemicals and substances distributed under the Powerlab trade names. Acting together and in furtherance of the objectives of making a profit and violating the law, CR and Neil Perkins contacted and agreed with Patrick Williams and Frank Bedoloto to have their company, Reaction Nutrition LLC, (1) import from China (to that business in Pennsylvania) the chemicals necessary to produce the Powerlab products, (2) bottle and label the Powerlab products in Pennsylvania, (3) distribute the Powerlab products by sending them from Pennsylvania to Colorado for further distribution throughout the United States. Thereafter, acting together and interdependently, the defendants marketed and distributed the new drugs described in the Indictment throughout the United States. In furtherance of their agreement and conspiracy, the defendants conducted each of the overt acts described in the indictment, including (1) communicating with each other and customers via email, (2) importing chemicals from China, (3) sending Powerlab products from Pennsylvania to Colorado for further distribution, (4) making false representations in the labeling of the Powerlab products, and (5) making false statements to the FDA and consumers regarding the nature of the Powerlab products.

Patrick Williams and Frank Bedoloto, acting as principles and representatives of Reaction Nutrition LLC, ran a manufacturing facility in Pennsylvania that imported chemicals from China in order to manufacture, package and distribute a number of muscle-building products for customers like Powerlab, CR and Neil Perkins. Those products were shipped throughout the United States to places like Colorado. Neil Perkins, as a representative of Powerlab Nutrition LLC, ordered and received the muscle-building products for sale through a retail store in Colorado. He ordered the products, received the shipments from Pennsylvania, and further distributed the products to consumers. Between 2009 and 2012, Neil Perkins, individually and as an authorized representative of Powerlab, regularly ordered the labeling, bottling and distribution (from Pennsylvania to Colorado) of synthetic steroid Powerlab products via e-mail and telephonic communications with Patrick Williams and Reaction Nutrition. Those products were thereafter shipped by Reaction Nutrition LLC, Patrick Williams and Frank Bedoloto in interstate commerce from Pennsylvania to Colorado, and received in Colorado by Powerlab and Neil Perkins. The labeling on all those products falsely represented the contents were dietary supplements to create the impression the substances were legally sold and safe for consumer consumption. Customers for these types of muscle-building products included high school athletes and body-builders.

Between 2009 and 2012, Powerlab, CR, Perkins, Williams, Bedoloto and Reaction Nutrition LLC knowingly devised and executed a scheme to defraud the FDA and consumers, and defeat the lawful functions of the FDA, by misrepresenting the contents of the Powerlab products as merely a "dietary supplement" when in fact it was a new drug that was not approved or subjected to the new drug application process of the Food and

Drug Administration, in violation of 21 U.S.C. §§ 331(d), 333(a)(2) and 355. The chemicals imported from China were known to each of the above individuals and entities to be unapproved new drugs that had never been tested for safety and efficacy, and were subject to regulation in the United States by the Food and Drug Administration (FDA). Those same chemicals were then combined with other substances to create muscle-building products that were shipped from Pennsylvania to Colorado and subsequently sold through retail outlets and over the internet, including in Colorado.

The Powerlab products included trade names such as Epitest, Androdrol, Androdrol Extreme, Primabol, Halotren, and Halotest-25 which were all products distributed or caused to be distributed by the defendants throughout the United States. The products were represented to contain one or more of the following synthetic steroids:

- 4-chloro-17a-methyl-androst-1,4-diene-3-17b-diol
- 2a,3a-epithio-17a-methyl-5a-androstan-17b-ol
- 13-ethyl-3-methoxy-gona-2,5(10)dien-17-one
- 2a-17a-dimethyl-17b-hydroxy-5a-androstan-3-one
- 4-chloro-17-a-methyl-andro-4-ene-3,17b-diol.

Androdrol and Androdrol Extreme were also labeled as containing 6-bromoandrostenedione (6-bromo), which is a synthetic steroidal inhibitor of estrogen synthesis. The labeling for Epitest, Androdrol, Androdrol Extreme, Primabol, Halotren, and Halotest-25 claimed that the product as a whole or the synthetic ingredient or ingredients listed on their respective labeling would affect the structure or function of the body. Epitest, Androdrol, Androdrol Extreme, Primabol, Halotren, and Halotest-25 were drugs and new drugs that required FDA-approval before they could be lawfully distributed in interstate commerce. The FDA has never approved Epitest, Androdrol, Androdrol Extreme, Primabol, Halotren, or Halotest-25 for lawful use in the United States.

Similarly, the labeling for those new drugs was never approved by the FDA either. Epitest, Androdrol, Androdrol Extreme, Primabol, Halotren, Halotest were misbranded within meaning of 21 U.S.C. 352(a) in that their labeling falsely and misleadingly identified them as "dietary supplements" and legal products when none of these products were actually "dietary supplements" or legal.

These products were shipped in interstate commerce for pay from Pennsylvania to Colorado on numerous occasions between 2009 and 2012, including but not limited to the following occasions:

| "On or About" Date of Invoice or Shipment | Invoice Number | Misbranded Drug | Shipped From | Shipped To |
|---|---|---|---|---|
| 5/10/2011 | 841 | Primabol | Pennsylvania | Colorado |
| 8/8/2011 | 1425 | Androdrol | Pennsylvania | Colorado |
| 1/2/2012 | 2398 | Halotest-25 | Pennsylvania | Colorado |
| 2012 | | Epitest | Pennsylvania | Colorado |

During the period of the conspiracy alleged, Powerlab and the defendants distributed over $2.5 million dollars of the above synthetic steroids. The synthetic steroids were by far the most profitable products sold through the Colorado retailer.

The chemicals in the Powerlab products constituted new drugs that were unapproved by the FDA. Contrary to the law and the FDA, the products were marketed as "dietary supplements" in order to circumvent the FDA's regulatory authority over drugs and new drugs, and to conceal their true identity as new drugs. Additionally, those new

drugs were never the subject of a new drug application or the approval process of the FDA as required by law.

The defendants, in an effort to avoid law enforcement scrutiny, monitored the Controlled Substances lists to avoid the DEA, and monitored FDA cases involving body-building to gauge their criminal exposure. They knew the chemical compounds in the Powerlab products were subject to scrutiny by a number of government law enforcement agencies, including the Food and Drug Administration (FDA), the Department of Homeland Security, and the Drug Enforcement Administration (DEA). The tested samples from the execution of the search warrant, and several undercover buys, were determined to contain steroids or synthetic steroids. All the products therefore were new drugs. Some of the products tested contained substances that were subsequently added to the Controlled Substances lists by the DEA; and at least two of the tested products contained substances were already on the Controlled Substances list.

**5. THE VICTIMS AND RESTITUTION:** Restitution is discretionary pursuant to the Victim Witness Protection Act 18 U.S.C. § 3663. *United States v. Guthrie*, 64 F.3d 1510, 1514 (10th Cir. 1995); USSG § 5E1.1. This Court has full discretion whether to impose an order of restitution, taking into consideration: (1) the victims' losses as a result of the offense, (2) the defendant's financial resources, and (3) any other factors the Court deems appropriate.  18 U.S.C. §§ 3556, 3663(a)(3), 3664, and U.S.S.G. § 5E1.1. However, because of the nature of the offense, restitution is not appropriate in this case; no victims have been ascertained to date and the government did not suffer an actual financial loss.

 **6. SENTENCING COMPUTATION:**   The Government agrees with the calculations of the plea agreement, consistent with the advisory United States Sentencing Guidelines

(USSG) and the calculations of the United States Probation Office, which are reflected in the PSIR. However, the Government believes the appropriate sentence pursuant to its plea agreement, given the circumstances of the case, should a $100,000.00 fine; and to the extent necessary to accomplish that sentence, herein moves for a variance, if needed.

**7.   RECOMMENDATION:**   Consistent with the sentencing factors described in 18 U.S.C. § 3553(a), the Government makes the following analysis and recommendation**:**

   a. **Reflects the Seriousness of the Offense, Promotes Respect for the Law and Provides a Just Punishment for the Offense.**

   Although business organizations, because of their very nature, are not subject to imprisonment like individuals, a substantial fine imposed along with a judgment of conviction for felony conduct has an undeniable industry-wide deterrent effect, and promotes respect for the law. As in this case, industry participants closely follow legal developments in the synthetic steroid market. Those that are otherwise involved in legitimate business will steer away from distributing suspect products that subject consumers to potentially devastating physical consequences. Without a doubt, any offense that involves the illegal distribution of chemical substances to an unwary public presents a significant danger to public health; especially the distribution of substances like synthetic steroids. The defendants, including and through Powerlab LLC, continued their conduct for over 5 years, driven entirely by a profit motive. Over 2.5 million dollars of synthetic steroids were distributed throughout the United States. A significant fine along with a felony judgment of conviction promotes respect for the law and serves notice on the entire industry that such conduct should be avoided.

   b. **Affords Adequate Deterrence to Criminal Conduct.** The Government's recommended sentence will deter others and encourage

strict compliance with the food and drug safety statutes. A sentence involving a significant fine for this corporate entity will send a message of deterrence to the food and body-building industry. The sentence recommended by the Government addresses this issue.

c. **Protects the Public from Further Crimes of the Defendant.** The defendants are sensitive to the potential injury they have caused. The government believes the defendants, including the current owners of this business entity, are remorseful and will not engage in any criminal conduct in the future. The government is convinced this corporation, and its current owners, will avoid criminal conduct and thus the recommendation will ensure the public is protected from any further conduct that may constitute a crime. The current owners of the defendant corporate entity have cooperated with the government in its investigation since the execution of the search warrant in or around September, 2012.

d. **Provides the Defendant with the Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.** The Government believes that since this defendant is a business organization, this factor should not weigh heavy in the Court's determination.

e. **Need to Avoid Unwarranted Sentencing Disparity among Defendants with Similar Records Guilty of Similar Conduct.** The Government believes its recommendation is consistent with dispositions involving other corporate entities that subsequently cooperate with government investigations.

    f. **The Need to Provide Restitution to Victims.** In this case, restitution is discretionary and is addressed above. However, as discussed above, restitution does not appear to be an issue in this case.

The Government recommends a sentence of **$100,000.000 fine,** and a $100.00 special assessment.

WHEREFORE, the government requests a sentence by this Honorable Court in the manner set out above.

Respectfully submitted this 19th day of October, 2016

        ROBERT C. TROYER
        Acting United States Attorney


    By: *s/Jaime A. Peña*
      JAIME A. PEÑA
      Assistant United States Attorney
      U.S. Attorney's Office
      1225 17th Street, Suite 700
      Denver, CO 80202
      Telephone: 303-454-0100
      Fax: 303-455-0409
      Jaime.Pena2@usdoj.gov
      Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of October, 2016, I electronically filed the foregoing **GOVERNMENT'S SENTENCING STATEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all case participants.

*s/ Dee Boucher*
United States Attorney's Office
